**Hearing Date and Time:**
                                                           July 11, 2017 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In Re:

                                                           Chapter 11

**THE CULTURE PROJECT, INC,**                 Case No.:  16-11874 (MEW)

                                       **Debtor.**
------------------------------------------------------- -X

## APPLICATION FOR AN ORDER FURTHER EXTENDING DEBTOR'S TIME PERIODS TO FILE AND A SMALL BUSINESS PLAN OF REORGANIZATION AND TO A CONFIRM SMALL BUSINESS PLAN OF REORGANIZATION

TO:    THE HONORABLE MICHAEL E. WILES.
         UNITED STATES BANKRUPTCY JUDGE:

        The application of The Culture Project, Inc., the debtor and debtor in possession (the "Debtor"), by its attorneys, Shafferman & Feldman, LLP, seeking entry of an order pursuant to sections 1121(e)(3) and 1129(e) of title 11 of the United States Code (the "Bankruptcy Code"): (1) further extending the Debtor's time to file a small business plan of reorganization for sixty (90) days from July 24, 2017 through and including October 23, 2017; (2) further extending the Debtor's time to confirm a small business plan of reorganization for ninety (90) days from September 7, 2017 through and including December 6, 2017; and (3) granting the Debtor such other and further relief as this Court deems just and proper, respectfully alleges:

## BACKGROUND

**The Debtor**

1. The Debtor is a New York 501(c)(3) corporation which was in 1996 incorporated in a former piano restoration factory on East 91st Street by Allan Buchman, the founder and Artistic Director of the Debtor ("Buchman"). The Debtor's mission continues to be to support the development of artistic voices that contribute to the betterment of a civil and just society by producing and exhibiting theatrical and spoken word performances.

2. In 2000, the Debtor raised 1.2 million dollars and converted a lumberyard at 45 Bleecker Street (the "Premises") into a two theater performing arts center: the Main Stage (199/299 seats) and 45 Below (99/150 seats). In the past decade, the Debtor has grown from a small theater impacting 12,000 patrons annually to an influential theater impacting over 150,000 patrons annually.

3. The Debtor's principal businesses was making its former theatre and performance spaces available for license by third party producers and production companies, as well as producing and exhibiting its own projects and productions

4. The Debtor had leased the Premises from its landlord pursuant to a lease, dated April 18, 2012. Under the Lease, the Debtor agreed, among other things, to lease the entire first floor and basement of the Premises for an initial term of one year (January 1, 2012 – December 31, 2012) but renewable for up to an additional ten (10) years.

**The Bertha Foundation Grant Agreement**

5.     In February, 2012 Buchman was approached by Mr. Anthony Selwyn Tabatznik ("Tabatznick")[1], the principal of the Bertha Foundation ("Bertha")[2] and a business colleague of the husband of the Chair of the Board of the Debtor, about subleasing the basement space at the Premises. Due to the fact that the basement space figured into the Debtor's long term plans, the Debtor advised Tabatznik that a Sublease was not possible, but that the Debtor would be open to discussing a usage agreement subject to certain conditions, one of which was that there would be no renewal option in any agreement.

6.     Buchman met continuously with Tabatznik's nephews at Tabatznik's over the following three (3) months and in June, 2012 reached an understanding with Bertha pursuant to which it would pay the Debtor $800,000 over five (5) years as follows: $400,000 upon execution of a written agreement and $100,000 per year for the next four (4) years. The Debtor was sent an email stating that the Bertha Board had approved a grant to the Debtor, on the payment terms.

7.     On or about September 10, 2012, the Debtor entered into a grant agreement the ("Grant Agreement") with Bertha, back dated to July 10, 2012. Pursuant

---

[1] Tabatznick also serves as a partner at The Social Entrepreneurs Fund. He is also Founder of Robin Hood Holdings, Ltd. and the Arrow Group ApS, and served as its Chief Executive Officer. Tabatznik served as a Director of the parent company of the Arrow Group from 2003 to 2009, and was also the Founder of The Generics Group Ltd (now Merck Generics Group BV).

[2] Bertha is an entity with its principal place of business in the United Kingdom. According to its website, Bertha supports activists, storytellers and lawyers that are working to bring about social and economic justice, and human rights for all.

to the Grant Agreement, the Culture Project agreed to provide exclusive use of the basement level of the Building to Bertha or for "projects approved by the Bertha Foundation" for a term of five (5) years (July 10, 2012 – July, 2017).

8. The terms and conditions of the Grant Agreement specifically provide that "The Culture Project will use this grant in order to implement the following program: rental of the building that house The Culture Project while bestowing exclusive use of the basement level of the building to The Bertha Foundation or projects approved by The Bertha Foundation."

9. The total amount that Bertha promised to pay was $800,000, with an initial upfront payment of $400,000 and eight additional $50,000 payments to be paid semi-annually beginning January 2014 for four years.

10. Bertha paid the initial $400,000, and made one subsequent payment of $50,000 in early 2014 to the Debtor. Bertha has refused to make any additional payments since that time.

**The Debtor's Sublease Agreement with SubCulture**

11. On December 13, 2012, in furtherance of the Bertha Agreement and with the Bertha's knowledge and approval, the Debtor entered into a Sublease Agreement with Subculture, LLC3 ("SubCulture") for the exclusive use of the basement space of the Premises and for nonexclusive use of the first floor lobby and passage and stairs for the purpose of access to the basement (the "Sublease").

4

**Bertha's Default Under the Bertha Agreement**

12.     The Bertha Agreement requires that Bertha remit to the Debtor semi-annual payments, in the amount of $50,000, beginning January 2014. With the exception of a recent payment of $13,666, Bertha has only made one such payment.

**SubCulture's Default Under the Sublease**

13.     The Debtor believes that it is not required, under the Sublease or otherwise, to provide use/occupancy of the Subleased Areas to Bertha, SubCulture or any other designee without being compensated for same. As described in paragraph 17, supra, with the exception of a recent payment of $13,666, Bertha has only made one such payment. To date, SubCulture has failed to pay rent to the Debtor for its use of the subleased portion of the Premises.

14.     In addition to the failure to pay rent, the Debtor believes that SubCulture breached the Sublease by its failure to perform material terms of the Sublease Agreement, including but not limited to, its failure to pay invoices due to the Debtor for, property taes, utilities, sanitation, trash removal, and box office expenses, in violation of Section 6(a)-(c) and Section 15 of the Sublease. Therefore, on August 4, 2014 the Debtor sent seven (7) separate notices of default to SubCulture by certified mail.

15.     SubCulture did not cured any of these defaults. Based upon these uncured defaults, pursuant to a letter dated December 8, 2014, Culture Project

---

3 SubCulture is a limited liability company formed under the laws of the State of New York.

5

terminated the Sublease with SubCulture ("Termination Letter"). Under the Termination Letter, the Debtor required SubCulture to vacate the Subleased Areas by January 11, 2015, and to remove its property and to repair any damages to and surrender the Subleased Area by the same date. Thereafter the Debtor negotiated with SubCulture for a period of almost 18 months in an effort to resolve the issues giving rise to the Termination Letter, but these negotiations were not fruitful.

16. Since SubCulture continued to occupy the Subleased Area as a holdover tenant without a legal right of possession, by letter dated May 21, 2016, the Debtor made a renewed demand to SubCulture to vacate the Subleased Areas.

**The Debtor's Default to its Landlord**

17. As a result of the cash flow problems created by Bertha's default, the Debtor fell into arrears on its rental obligations to the Landlord. Therefore, on or about March 17, 2015, the Landlord commenced a non-payment proceeding entitled <u>Rogers Investment NV LP v. The Culture Project</u>, (L&T #58884/15) in the Civil Court of the City of New York, County of New York: Non- Housing Part 52 (the "Civil Court Action").

18. In April of 2016, the Debtor entered into an Amended Two Attorney Stipulation between Landlord and the Debtor on April 21, 2016 (the "Amended Stipulation"), and filed in the Civil Court Action on April 22, 2016.

19. Despite the financial hardships described above, the Debtor had been able to pay almost seventy (70%) percent of the $186,801.31 of arrears with

6

respect to the First Floor under the Amended Stipulation.

20. On June 13, 2016, the Debtor received a copy of a Notice of Eviction, dated June 10, 2016 from City Marshal George Essock Jr. (the "Notice of Eviction"). The Debtor did not receive proper notice of default, and was not provided with an opportunity to cure same, as required under the Amended Stipulation. Pursuant to the Amended Stipulation, the Landlord must provide proper notice and an opportunity to cure before it can exercise its warrant and notice an eviction.

**The Debtor's Commencement of its Chapter 11
Case and Commencement of an Adversary
Proceeding Against SubCulture and Bertha**

21. On June 29, 2016, the Debtor filed this Chapter 11 case to enable it to continue it's not for profit business, and reorganize its financial affairs. On July 12, 2016, the Debtor filed its schedules and statement of financial affairs. The Debtor is in possession of its assets and is continuing to manage its property in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or creditors committee has been appointed in this case.

22. On July 24, 2016, the Debtor commenced the above-captioned adversary proceeding seeking: (1) judgment against Bertha and/or SubCulture in the amount of $350,000, plus additional compensatory damages in an amount to be proven at trial, together with costs and interest; (2) an order directing SubCulture to vacate the Subleased Areas; (3) an order directing SubCulture to pay Plaintiff monthly use and occupancy charges, in the amount of not less than $20,000, retroactive to January,

7

2015, and continuing until SubCulture vacates the Subleased Areas; (4) reimbursement of the Debtor's attorneys' fees and costs; (5) enhanced damages as may be appropriate and permitted to the full extent of the law; and (6) other equitable and legal relief as determine by this Court (the "Adversary Proceeding").

23. On or August 5, 2016, the Debtor filed a motion in the Adversary Proceeding compelling SubCulture to immediately pay it use and occupancy charges, in the amount of $20,000, for the month of August, 2016 and thereafter until SubCulture surrenders possession of the Premises (ECF Adv. Pro. Doc. #5)(the "U&O Motion"). On August 24, 2016, SubCulture filed a motion seeking to dismiss the Adversary Proceeding (ECF Adv. Pro. Doc. #7)(the "Dismissal Motion").

24. The Debtor, SubCulture and Bertha, thereafter, resumed discussions aimed at resolving the disputes which gave rise to the Adversary Proceeding. To aid in this settlement effort, on November 23, 2016 this Court issued an order assigning the dispute to mediation (the "Mediation"), appointing the Honorable Elizabeth S. Strong, United States Bankruptcy Judge in the Eastern District of New York as mediator, and rescheduling dates.

25. At the same time that the Mediation is proceeding, the Debtor and SubCulture submitted briefs in connection with the U&O Motion and the Dismissal Motion. The Debtor also filed an amended complaint in the Adversary Proceeding. At this time, the U&O Motion and the Dismissal Motion are *sub judice*, and the parties are awaiting a decision from this Court.

8

**Motion to Assume the Lease**

26. On January 10, 2017, the Debtor filed a motion granting it permission to assume the Lease (the "Lease Assumption Motion")(ECF #60). On February 7, 2017, the Landlord filed an objection to the Lease Extension Motion (ECF #66); and on the Debtor filed a response to the Landlord's objection (ECF#68).

27. Thereafter, the Debtor and the Landlord have engaged in discussions seeking to resolve the Landlord's objection to the Lease Assumption Motion. The Landlord and the Debtor have also entered into several stipulations extending the Debtor's time to assume or reject the Lease.

28. By order dated April 26, 2017, this Court denied Debtor's Lease Assumption Motion (ECF #83), and the Lease was deemed rejected as of midnight on May 6, 2017. The Debtor has subsequently left the Premises.

29. In this small business Chapter 11 case, the Debtor's current deadline to file a plan of reorganization is July 24, 2017; and its current deadline to confirm a plan of reorganization is September 7, 2017, pursuant to an order of this Court, dated May 23, 2017 (ECF #85). By this motion, the Debtor seeks a ninety (90) day extension of each of the above dates so that it must filed a plan of reorganization no later than October 23, 2017[4], and must confirm a plan of reorganization no later than December 6, 2017.

---

[4] The 90th day is October 22, 2017, which falls on a Sunday.

9

**ARGUMENT**

30. The Debtor is a "small business debtor", within the meaning of section 101(51D) of the Bankruptcy Code. In the 2005 amendments to the Bankruptcy Code, Congress added certain specific, time-sensitive provisions for small business debtors seeking to confirm a plan of reorganization.

31. In section 1121(e)(1), the Bankruptcy Code addresses the small business debtor's time to file a plan and disclosure statement, by first providing that only the debtor may file a plan for the first one hundred and eighty (180) days after the date of the order for relief, but that the debtor must file a plan within three hundred (300) days.

32. In a small business case, the court shall confirm a plan that complies with the applicable provisions of this the Bankruptcy Code and that is filed in accordance with section 1121(e)(3) of the Bankruptcy Code not later than 45 days after the plan is filed, unless the time for confirmation is extended in accordance with section 1121(e)(3).

33. Specifically, Section 1129(e)(3) of the Bankruptcy Code provides that:

> (3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if-
>
> (A) the debtor, after providing notice to parties (including the United States trustee), demonstrates by a preponderance of evidence that it is more likely than not that the court will confirm a plan within in a reasonable amount of time;
>
> (B) a new deadline is imposed at the time the extension is granted; and
>
> (C) the order extending the time is signed before the existing deadline has expired. 28 U.S.C. § 1121(e)(3).

34. Section 1121(e)(3) sets forth the following three requirements that must be satisfied to extend the deadlines within which a plan of reorganization in a small business case must be filed and confirmed:

(A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;

(B) a new deadline is imposed at the time the extension is granted; and

(C) the order extending time is signed before the existing deadline has expired.

35. To satisfy the requirements of, and obtain an extension under, section 1121(e)(3) of the Bankruptcy Code, small business debtors must "'submit some evidence from which the Court can find that confirmation within a reasonable amount of time is likely.'" In re: New Hope Christian Church, 2013 WL 4827849 (Bankr. E.D. N.C 2013)(quoting In re Darby Gen. Contracting, Inc., 410 B.R. 136, 144 (Bankr.E.D.N.Y.2009)). While "'a debtor seeking the Section 1121(e)(3) extension of time must put on evidence from which the Court can determine whether the Court will confirm a plan within a reasonable amount of time, the Court need not conduct a trial on confirmation.'" In re: New Hope Christian Church, 2013 WL 4827849 (Bankr. E.D. N.C 2013) (quoting In re AMAP Sales & Collision, Inc., 403 B.R. 244, 249 (Bankr.E.D.N.Y.2009)).

36. In this case, the reason that the Debtor is seeking the requested ninety (90) day extension is that the Debtor needs a reasonable amount of time to complete

11

its formulation of its new business plan due to the loss of its Lease. The Debtor is now in the process of locating a new office space and place to hold its productions.  The Debtor has located appropriate spaces, and is in the process of finalizing these arrangements, and will seek this Court's approval of any new written leases.  The Debtor is also in the process of booking events, and believes that the first event will be in September, 2017.

37. The Debtor has also renewed settlement discussions with SubCulture which it hopes will provide some funding for its plan and "seed money" for its new ventures.

38. Because of the current fluidity of this case and the resulting uncertainty of the direction in which the Debtor is heading, it is seeking a ninety (90) extension of the time to file a Plan. All things being equal, the Debtor hopes that it should be able to file a confirmable plan within the ninety (90) day extension period sought by this motion.

39. The Debtor believes that it can satisfy its burden of proof under section 1121(e)(3) since it believes that it will be able to file a confirmable plan as it adapts to the recent developments described herein and, forthwith, formulates, a new business plan.

**WHEREFORE,** for all of the foregoing reasons, the Debtor seeks the entry of an order, a copy of which is attached hereto as **Exhibit "A"**, pursuant to sections

1121(e)(3), and 1129(e) of the Bankruptcy Code: (1) further extending the Debtor's time to file a small business plan of reorganization for ninety (90) days from July 24, 2017 through and including October 23, 2017; (2) further extending the Debtor's time to confirm a small business plan of reorganization for ninety (90) days from September 7, 2017 through and including December 6, 2017; and (3) granting the Debtor such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 21, 2017

                                            **SHAFFERMAN & FELDMAN   LLP**
                                            **Counsel for the Debtor**
                                            **137 Fifth Avenue, 9th Floor**
                                            **New York, New York 10010**
                                            **(212) 509-1802**


                                          **By:   /S/ Joel M. Shafferman**
                                                  **Joel M. Shafferman**